INMATES OF LYCOMING COUNTY PRISON, Individually and on behalf of all others similarly situated, et al., Plaintiffs,

v.

R. Brinton STRODE, Individually and in his capacity as Warden of the Lycoming County Prison, et al., Defendants.

Civ. No. 77–583.

United States District Court, M. D. Pennsylvania.

March 16, 1978.

---

Susquehanna Legal Services, Williamsport, Pa., for plaintiffs.

Lester L. Greevy, Chas. Greevy, III, Williamsport, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

The original complaint in this civil rights action was filed as a class action on July 6, 1977 by fifteen plaintiffs who at that time were inmates at the Lycoming County Pris-

on, Williamsport, Pa. (hereinafter referred to as the prison). After appointment of counsel, an amended complaint was filed as a class action on October 25, 1977 by fifteen plaintiffs who were or had been (after July 6th) inmates at the Prison. Eight inmates appear as plaintiffs in both complaints. The amended complaint challenges various conditions and practices at the prison, including the adequacy of the law library, the lawfulness of the visitation rules, the safety of the prison in the event of fire, conditions in certain cells, the adequacy of medical care, the classification of prisoners, the treatment of pretrial detainees, and the conditions to which the women prisoners are subjected. The named defendants are the warden, several officials connected with the prison, and members of the Lycoming County Prison Board of Inspectors. Plaintiffs basically seek various forms of injunctive relief. Presently before the court are the motion by defendants to dismiss the class action and plaintiffs' motion for class action certification pursuant to Fed.R.Civ.P. 23(a) and 23(b)(2). It will be ordered that this action may proceed as a class action consisting of all present and future inmates of the prison. It will also be ordered that two sub-classes be conditionally maintained consisting of 1) all present and future pretrial detainees incarcerated at the prison and 2) all present and future women inmates of the prison.

■ Plaintiffs have the burden of demonstrating that the requirements of Fed.R. Civ.P. 23 have been satisfied. *See Blumenthal v. Great American Mortgage Investors et al.*, 74 F.R.D. 508 (N.D.Ga.1976). This means showing, *inter alia*, that all the prerequisites outlined in Rule 23(a) and one of the prerequisites outlined in Rule 23(b) have been complied with. Rule 23(a) provides:

> Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or

defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

■ Before discussing the four requirements it should be pointed out that there are two other requirements obvious from Rule 23(a), but not explicitly spelled out. Namely that a definable class exists and that the representatives are members of that class. *See* 7 Wright & Miller, Federal Practice and Procedure, *Civil* § 1759, p. 573 (1972). Defendants argue, *inter alia*, that this action should not be allowed to proceed as a class action because the class is too indefinite and because any action taken in the case will affect future inmates. However, it seems to me that the class is obviously definable and identifiable, namely, all present and future inmates at the prison, all present and future pretrial detainees, and all present and future women inmates. And the fact that benefits or detriments will accrue to future inmates is not a reason to deny certification. In the context of challenging prison conditions any action taken or not taken will, of course, have an effect on those who are incarcerated at the prison in the future. The use of the class action form is a desirable and logical way to challenge prison conditions and it only makes sense to include future inmates. *See Santiago v. City of Philadelphia*, 72 F.R.D. 619 (E.D.Pa.1976); *Miller v. Carson*, 401 F.Supp. 835 (M.D.Fla.1975); *Dillard v. Pitchess*, 399 F.Supp. 1225 (C.D. Cal.1975).

■ The second obvious, but unspelled out, requirement of 23(a) is, as stated, that the representatives are members of the class. Among the named plaintiffs here are people who were inmates, pretrial detainees, and women inmates at the time of the filing of the amended complaint. Hence, at that time, there were representatives who were members of the three classes. The more difficult question is whether, because they may no longer be incarcerated at the prison, the claims of the representatives are moot and the class cannot therefore be cer-

tified. The general rule is that the named representatives must be members of the class at the time of filing and at the time the District Court certifies the class. *See Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). However, as explicitly stated in the *Sosna* opinion, in appropriate circumstances, certification may relate back in terms of deciding whether the named representatives are members of the class. Whether it shall relate back depends on the particular circumstances of the case, with particular emphasis on whether this is the type of issue which might escape review. *Id.* at 402, n. 11, 95 S.Ct. 553.

■ Defendants contend that as of Dec. 19, 1977, of the 22 plaintiffs who have been involved in this case only two remained at the prison and two were under work release or Behavior Skills Unit confinement. See Document 31, filed Dec. 19, 1977. It is unknown whether, as of the date of this Memorandum, any of the named plaintiffs are still at the prison. Defendants state that there is a continual turnover of inmates at the prison. Given this fact, which makes the claimed deprivations capable of repetition but evading review, plus the probable fact, see infra, that there will be a constant existence of a class suffering the alleged deprivations, *see Gerstein v. Pugh*, 420 U.S. 103, 111 n. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), I feel this is an appropriate situation to allow the certification to relate back. *See Santiago v. City of Philadelphia*, 72 F.R.D. 619 (E.D.Pa.1976).

The requirements of Rule 23(a):

(1) Numerosity and Practicality of Joinder

■ Plaintiffs assert that they believe that the average population of the prison is fifty. Defendants state that for the week preceding July 6, 1977 there were at least 50 inmates. They state that on October 21, 1977, there were 34 inmates and that for the previous week the number ranged up to 41. Courts vary as to the size of a class necessary for a class action, *see Philadelphia Electric Company v. Anaconda American Brass Co.*, 43 F.R.D. 452 (E.D.Pa.1968), (class action with 25 members); *Fidelis Corporation v. Litton Industries, Inc.*, 293 F.Supp. 164 (S.D.N.Y.1968), (class with between 35 and 70 members); *State of Utah v. American Pipe and Construction Co.*, 49 F.R.D. 17 (C.D.Cal.1969), (350 members did not make joinder impractical). In our case, although the population of the prison seems to only average somewhere around 40 or 50 at any particular moment, and although all the inmates are in close physical proximity, joinder is impractical here and the size of the class is quite large because we are concerned with future inmates. Joinder is also impractical given the apparent rapid turnover of inmates.[1]

■ However, I do not believe that plaintiffs have completely met their burden with this requirement in regard to the two subclasses. There is no explicit allegation or showing that there is a constant population at the prison of women and pretrial inmates.[2] Plaintiffs do state that they believe there were six or seven women housed at the prison during one month in the summer of 1977. They also state that there were as many as nine women during the summer of 1976. There are no allegations regarding the number of pretrial inmates generally housed at the prison. Plaintiffs must supply the court with more specifics

---

1. Along with claiming that joinder here is practical, defendants allege that the failure of all the inmates to join as plaintiffs is indicative of the nonjoiners lack of sympathy with the action. Defendants also allege that there have been indications that one or more of the twenty-two named plaintiffs (on both complaints) have sought information in regard to withdrawing from the class. But it is not necessary in a 23(b)(2) class action that all members of the class desire to challenge defendants' conduct nor even that all members have been aggrieved

by defendants' conduct. *See Davis v. Weir*, 497 F.2d 139, 146 (5th Cir. 1974); 7A Wright & Miller, Federal Practice and Procedure, *Civil*, § 1775 (1972).

2. However, even if it turns out that there are periods of time when there are no women or pretrial inmates at the prison, that might not necessarily moot the case during those periods. This also could be one of those situations capable of repetition yet escaping review.

regarding the inmate population. However, since the whole thrust of plaintiffs' complaint assumes a constant but changing population of women and pretrial inmates and since the class action form is particularly well suited for this type of litigation, I have decided to conditionally certify the two subclasses. But plaintiffs must supply the court with more detailed information regarding the breakdown of the inmate population at the prison.

### (2) Common Questions

Here there are obviously numerous questions of law and fact common to the main class and the two subclasses. Common questions need only exist, not predominate. *See Sommers v. Abraham Lincoln Federal Savings and Loan Association et al.*, 66 F.R.D. 581, 586 (E.D.Pa.1975). Factual issues common to the main class include, *inter alia*, the condition of certain cells and the level of medical care. Factual issues common to pretrial detainees include the above plus the particular treatment such detainees receive. The same is true as to the women inmates. Common legal issues include, *inter alia*, the constitutional standards to be applied. Defendants do not dispute that there are common issues. However, they do argue that the class should not be certified because the amended complaint contains allegations concerning specific inmates and instances. But these act to serve as examples of the alleged deprivations and the existence of specific questions going to particular inmates does not vitiate the existence of common questions. In any event, almost the entire complaint deals with questions that are common to the classes.

### (3) Typicalness of Representatives' Claims

Although there is some confusion as to the exact meaning of this requirement, *see* 7 Wright & Miller, Federal Practice and Procedure, *Civil*, § 1764, p. 611 (1972), since all the representatives are, or were, inmates, it is alleged that they suf-

fered the same deprivations. Their claims are typical of the class.

### (4) Adequacy of Representatives

The adequacy of the representation depends on two factors: 1) the plaintiffs' attorney must be experienced, qualified, and generally able to handle the upcoming litigation, and 2) the plaintiffs must not have interests antagonistic to those of the class. *Wetzel v. Liberty Mutual Insurance Company*, 508 F.2d 239, 247 (3rd Cir. 1975), *cert. denied* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Plaintiffs are represented by Susquehanna Legal Services. This service employs four staff attorneys. It is alleged that three have prior experience in prison matters before the federal courts. At this point, I am more than satisfied as to the adequacy of counsel. I am also satisfied that the named representatives do not have interests antagonistic to the class. The only problem I see in terms of antagonism is the possible conflict between the claims of the subclasses and those of the general population of inmates. It is possible that if the subclasses prevail on some of their claims it would infringe on something that the general population now enjoys. However, this is unavoidable and should be somewhat vitiated by the use of these subclasses.

Defendants point to an eight page document filed by one of the named plaintiffs, Alfred Holcombe, on December 7, 1977, while he was incarcerated at the State Correctional Institution at Camp Hill, Pa., which in effect states, that he has had problems contacting one of the four staff attorneys at Susquehanna Legal Services. It is not clear exactly what import defendants claim this has, but I do not believe this impeaches the ability of the Susquehanna Legal Services to vigorously prosecute this action. If anything, it shows the continuing interest that Mr. Holcombe has in this action even though he is no longer incarcerated at the prison. Courts can look beyond the adequacy of counsel to see if the named representatives have the sufficient commit-

ment to justify his or her certification as a representative. *See Denny v. Carey,* 73 F.R.D. 654 (E.D.Pa.1977). At this point I am satisfied as to the representatives. If, in the future, there is some problem as to the adequacy of the named representatives, this court can always provide an opportunity for one or more present inmates to intervene for the purpose of also representing the class. *See Workman v. Mitchell,* 502 F.2d 1201 (9th Cir. 1974). In reality, in a case such as this where it is not certain that any representative will continue as an inmate throughout the entire pendency of the action, the vigor and dedication of the attorneys are of paramount importance. Nevertheless, plaintiffs should inform the court of the present status of all the named representatives.

Lastly, plaintiffs must satisfy one of the requirements of Fed.R.Civ.P. 23(b). Plaintiffs have moved to certify pursuant to 23(b)(2). Rule 23(b) coupled with 23(b)(2) reads:

> Class Actions Maintainable. Any action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

 Rule 23(b)(2) is especially designed for civil rights cases. *See* Advisory Committee Notes to the 1966 amendment to Rule 23; 7A Wright & Miller, Federal Practice and Procedure, *Civil,* § 1776, p. 35 (1972). Plaintiffs contend that defendants are involved in or have acquiesced in the alleged deprivations. Plaintiffs allege that defendants have acted on grounds applicable to the class and they have requested

final injunctive relief. Defendants do not contend that 23(b)(2) is inappropriate. I find that this action is correctly brought pursuant to Rule 23(b)(2).[3]

---

**3.** As a final note, defendants argue that this class action should be dismissed because one cannot bring a suit for the deprivation of another's civil rights. Defendants' brief is far from clear, but in any event this argument is totally without merit within the context of this case. The class action form is in part specifically designed to allow plaintiffs who have suffered or who are suffering an injury to bring an action as representatives on behalf of a class which has suffered or is suffering the same injury. Defendants do not allege that the named plaintiffs have not suffered the alleged deprivations. To the extent defendants may be referring to mootness or the ability of the named representatives to represent the class, see discussions *supra.*