JOHN A. CAMPBELL ET AL. *v.* NEW MILFORD BOARD
OF EDUCATION ET AL.

SUPERIOR COURT　　JUDICIAL DISTRICT OF　　FILE NO. 031226
LITCHFIELD

Memorandum filed August 12, 1980

*Margaret Hayman* and *Martha Stone,* for the plaintiffs.

*Sullivan, Lettick & Schoen,* for the defendants.

PICKETT, J.   The plaintiff John A. Campbell brought this action for injunctive and declaratory relief, as well as for compensatory damages by his father and next friend Anthony Campbell.   The plaintiff, a senior at New Milford High School, claims that an attendance policy promulgated by the defendant, the New Milford board of education, violates various provisions of the United States and Connecticut constitutions and is preempted by General Statutes §§ 10-184, 10-185, 10-199 through 10-202, 10-233c and 10-233d, relating to truancy and expulsion of students.   The attendance policy provides (1) that a student's grade is reduced by five points for every unauthorized absence in a particular course, and (2) that any student who misses more than twenty-four classes in a year-long course is denied credit for that course regardless of whether or not the absences are authorized.

The plaintiff has filed a motion for class certification, seeking certification of the class of all past, present and future students who have been, are or will be subject to the New Milford board of education.   For the reasons stated below the court grants the plaintiff's motion.

# I

Certification of class actions is governed in the first instance by the requirements of Practice Book, 1978, § 87, which provides: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." If these requirements are met then the court must consider Practice Book, 1978, § 88, which provides: "An action may be maintained as a class action if the prerequisites of Sec. 87 are satisfied and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Since the requirements for certification of class actions in federal court under rule 23 of the Federal Rules of Civil Procedure[1] are substantially similar to the Practice

[1] Rule 23 of the Federal Rules of Civil Procedure provides in pertinent part:

"(a) PREREQUISITES TO CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . . (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Book requirements, federal case law may be used to aid our construction of these requirements. See *Governor's Grove Condominium Assn., Inc.* v. *Hill Development Corporation,* 35 Conn. Sup. 199, 200.

The plaintiff bears the burden of establishing that all of the requirements of the rule are satisfied. *Rex* v. *Owens ex rel. State,* 585 F.2d 432, 435 (10th Cir.); *Smith* v. *Merchants & Farmers Bank,* 574 F.2d 982, 983 (8th Cir.); *Long* v. *Thornton Township High School District,* 82 F.R.D. 186, 189 (N.D. Ill.). Although the determination of whether a class action is appropriate is a matter for the trial court's discretion; *King* v. *Kansas City Southern Industries, Inc.,* 519 F.2d 20, 24–25 (7th Cir.); the requirements of the rule are to be given a liberal construction. *Donaldson* v. *Pillsbury Co.,* 554 F.2d 825, 831 (8th Cir.), cert. denied, 434 U.S. 856; *King* v. *Kansas City Southern Industries, Inc.,* supra, 25; *Eisen* v. *Carlisle & Jacquelin,* 391 F.2d 555, 563 (2d Cir.). In making this determination, most courts have held that the probability of success on the merits is irrelevant and should not be considered. 7 Wright & Miller, Federal Practice & Procedure, § 1759, pp. 577–78 (cases cited at n.81); [2] see also *Eisen* v. *Carlisle & Jacquelin,* 417 U.S. 156, 178. But see Wright & Miller, op. cit., § 1759, p. 577 n.77.

## II

There is no mechanical test for determining whether in a particular case the class is so numerous that joinder of all members is impracticable. *Kelly* v. *Norfolk & W. Ry. Co.,* 584 F.2d 34, 35 (4th Cir.).

---

[2] The basis for these holdings appears to be that the determination of whether the plaintiff's claims are substantial is more properly tested by a motion for summary judgment or a motion to dismiss. See, e.g., *Lamphere* v. *Brown University,* 553 F.2d 714, 718 n.11 (1st Cir.); *Denny* v. *Carey,* 73 F.R.D. 654, 657 (E.D. Pa.); *Tober* v. *Charnita, Inc.,* 58 F.R.D. 74, 85 (M.D. Pa.).

The issue is one for the court to be resolved in light of the facts and circumstances of the case. Id.; *Boyd v. Ozark Air Lines, Inc.,* 568 F.2d 50, 54 (8th Cir.). Mere speculation or conclusory allegations as to how numerous the purported class is will not justify certification. *Valentino* v. *Howlett,* 528 F.2d 975, 978 (7th Cir.); *Wheeler* v. *Anchor Continental, Inc.,* 80 F.R.D. 93, 99 (D. S.C.); *Lloyd* v. *Industrial Bio-Test Laboratories, Inc.,* 454 F. Sup. 807, 812 (S.D. N.Y.). The plaintiff must show some evidence or a reasonable estimate of the number of class members. *Long* v. *Thornton Township High School District,* supra, 189.

In this case the plaintiff has shown through discovery that from 450 to 800 students have been affected by the attendance policy since it became effective in 1977. The impracticality of joining such a large number of plaintiffs is obvious. Management of such a large action would be quite burdensome and could lead to unnecessary delays. More importantly, the size of the individual monetary claims of the class members is likely to be small, making it less likely that they would bother to join as plaintiffs. See *Swanson* v. *American Consumer Industries, Inc.,* 415 F.2d 1326, 1333 n.9 (7th Cir.); see generally *In re Master Key Antitrust Litigation,* 528 F.2d 5, 10–11 (2d Cir.); *Eisen* v. *Carlisle & Jacquelin,* 370 F.2d 119, 121 (2d Cir.), cert. denied, 386 U.S. 1035. These factors lead the court to conclude that the size of the class is so numerous that joinder is impracticable.[3]

---

[3] Compare *Fujishima* v. *Board of Education,* 460 F.2d 1355 (7th Cir.) (class of all Chicago high school students satisfies numerosity in challenge to board of education regulation) and *Long* v. *Thornton Township High School District,* 82 F.R.D. 186 (N.D. Ill.) (showing of 7,337 suspensions and 84 expulsions satisfies numerosity in challenge to expulsion procedure) with *Doe* v. *Koger,* 480 F. Sup. 225 (N.D. Ind.) (failure to allege how numerous class of handicapped students actually expelled or suspended fatal to class claim in challenge to expulsion procedures).

## III

The requirement of commonality does not require a *complete* identity of legal and factual issues among all class members. See *Johnson* v. *American Credit Co. of Georgia,* 581 F.2d 526, 532 (5th Cir.); *Long* v. *Thornton Township High School District,* supra, 189. It only requires that some common questions exist, not that they predominate.[4] *Inmates of Lycoming County Prison* v. *Strode,* 79 F.R.D. 228, 233 (M.D. Pa.). Thus, the mere fact that there may be factual differences is not fatal to class certification; *Like* v. *Carter,* 448 F.2d 798, 802 (8th Cir.), cert. denied, 405 U.S. 1045; so that where the question of basic liability can be readily established by common issues the case is appropriate for a class action. *Gold Strike Stamp Co.* v. *Christensen,* 436 F.2d 791, 796 (10th Cir.). The fact that there may have to be an individual examination on the issue of damages has never been held to bar certification of a class. See, e.g., *Samuel* v. *University of Pittsburgh,* 538 F.2d 991, 995 (3d Cir.); *Gold Strike Stamp Co.* v. *Christensen,* supra, 798; *Governor's Grove Condominium Assn., Inc.* v. *Hill Development, Inc.,* 35 Conn. Sup. 199, 204. "In short, commonality is satisfied where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Gordon* v. *Forsyth County Hospital Authority, Inc.,* 409 F. Sup. 708, 717–18 (M.D. N.C.), aff'd in part, vacated in part, 544 F.2d 748 (4th Cir.).

This case presents a classic example of the existence of common issues. The plaintiff is challenging the policy on three major grounds: (1) that it was

[4] Of course, a finding that common issues (once found to exist under Practice Book, 1978, § 87 [2]) predominate over individual issues is required by Practice Book, 1978, § 88.

adopted ultra vires and is inconsistent with certain statutory provisions; (2) that the arbitrary reduction of grades and denial of credit violate substantive due process rights; and (3) that the exemption provisions are so discretionary as to violate due process. The major thrust of these claims attacks the policy on its face and the only concern with its application in an individual case is whether it was applied, not how it was applied. Where a representative party challenges a particular policy or regulation of an administrative body on constitutional or statutory grounds the courts have generally held that the requirement of commonality is satisfied. See, e.g., *Johnson* v. *American Credit Co. of Georgia,* 581 F.2d 526 (2d Cir.); *White* v. *Mathews,* 559 F.2d 852 (2d Cir.), cert. denied sub nom., *Califano* v. *White,* 435 U.S. 908; *Like* v. *Carter,* supra; *Long* v. *Thornton Township High School District,* supra; *Anderson* v. *Rizzo,* 80 F.R.D. 72 (E.D. Pa.); *Aiello* v. *City of Wilmington,* 426 F. Sup. 1272 (D. Del.); but see *Banks* v. *Board of Public Instruction of Dade County,* 314 F. Sup. 285, 288 (S.D. Fla.), vacated, 401 U.S. 988. Similarly, the fact that individual damages recoverable by each class member might differ does not justify denial of certification. The primary relief sought in this action is injunctive and declaratory in nature.

The defendant also contends that it may have to raise different defenses against different class members, noting especially that the statute of limitations may have run against former students. It is true that no class action may proceed on behalf of class members whose claims are barred by the applicable statute of limitations. *Schmidt* v. *Interstate Federal Savings & Loan Assn.,* 74 F.R.D. 423, 428 (D. D.C.). The present case, however, does not present this problem. Although there is no specific statute of limitations governing actions based on

the deprivation of constitutional rights, courts have generally applied the general tort statute of limitations to such actions where a more specific statute does not exist.[5] See *Williams* v. *Walsh,* 558 F.2d 667, 670 (2d Cir.) (applying Connecticut's three-year tort statute of limitations in suit alleging deprivation of constitutional rights under 42 U.S.C. § 1983). General Statutes § 52-577 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." In this case the earliest application of the attendance policy would be the beginning of the 1977–78 school year, the first year the policy went into effect. The complaint was filed on February 20, 1980, which is within the three-year period. Where all of the members of the putative class fall within the limitations period, class certification for those members is proper.[6] See *Governor's Grove Condominium Assn., Inc.* v. *Hill Development Corporation,* 35 Conn. Sup. 199, 201–202. In any event, even if questions of individual compliance with the statute of limitations are found to exist, such a finding is insufficient to justify a denial of class certification where the case also presents numerous common issues. See *Cameron* v. *E. M. Adams & Co.,* 547 F.2d 473, 478 (9th Cir.); *Williams* v. *Sinclair,* 529 F.2d 1383, 1388 (9th Cir.), cert. denied, 426 U.S. 936, and cases there cited.

---

[5] It is clear that in a suit to enforce a right which seeks both legal and equitable relief, equity will withhold its remedy if the legal right is barred by the relevant statute of limitations. See *Russell* v. *Todd,* 309 U.S. 280, 289; *Williams* v. *Walsh,* 558 F.2d 667, 671 (2d Cir.). Thus, resolution of the statute of limitation question with respect to monetary relief determines the propriety of injunctive and declaratory relief for the same cause of action.

[6] *American Pipe & Construction Co.* v. *Utah,* 414 U.S. 538, established that the timeliness of the claims of class members is measured as of the date of the complaint, not the date that the class was certified. That is, the statute is tolled from the time the complaint was filed until the decision on class certification is made.

## IV

The principles governing the determination as to whether the claims or defenses of the representative party are typical of the claims or defenses of the class are quite similar to those discussed in connection with the requirement of commonality. See *Karan* v. *Nabisco, Inc.*, 78 F.R.D. 388, 405 (W.D. Pa.). Thus, the requirement of typicality is satisfied when the claim of the representative party "arises out of the same event or practice or course of conduct that gives rise to the claims of the class members and is based on the same legal or remedial theory." *Long* v. *Thornton Township High School District,* supra, 190, quoting Newberg, Class Actions, § 1115c, p. 186. The presence of factual variations is generally immaterial; *Donaldson* v. *Pillsbury Co.,* 554 F.2d 825, 831 (8th Cir.), cert. denied, 434 U.S. 856; unless those variations render the representative's claims "markedly different" from those of the class. *Wofford* v. *Safeway Stores, Inc.,* 78 F.R.D. 460, 489 (N.D. Cal.); Wright & Miller, op. cit. (1979 Sup.), p. 157. "[T]he character of the interests sought to be protected by the named part[y] in this action must be examined and compared with those interests allegedly held in common by the group of individuals the named part[y] seek[s] to represent." *Caldwell* v. *Craighead,* 432 F.2d 213, 216 (6th Cir.), cert. denied, 402 U.S. 953; see also *Taylor* v. *Safeway Stores, Inc.,* 524 F.2d 263, 270 (10th Cir.).

Here there is nothing unique about the named plaintiff's legal claims or factual situation. All members challenge the statutory and constitutional validity of the policy without regard to the way in which it was applied in a particular case. The key factor is only *whether* it was applied not *how* it was applied. The plaintiff and the putative class members are, have been or will be students at the same

high school with the same administration. The *effect* on them will be basically the same—a reduction of their grades or a denial of credit. The fact that the plaintiff's injury may be more or less extensive than that of some of the class members is not sufficient to make his claims "markedly different" from those of the class. Thus, this case is distinguishable from those cases alleging that a defendant maintains unconstitutional or discriminatory practices in a number of different facilities; see, e.g., *Hill* v. *Western Electric Co.,* 596 F.2d 99, 101–102 (4th Cir.), cert. denied, 100 S. Ct. 271; *Taylor* v. *Safeway Stores, Inc.,* supra, 270; or where the putative class is so broad and so unrelated to the plaintiff's factual posture that the number of factual variations is endless. See, e.g., *Paton* v. *LaPrade,* 524 F.2d 862, 875 (3d Cir.) (high school student who wrote to socialist group for information for a term paper challenges FBI interception of letter on behalf of all persons who have been or will become engaged in correspondence with dissident political groups). On the basis of these principles, the court concludes that the plaintiff's claims are typical of the class.

## V

"In deciding whether the representative plaintiff will fairly and adequately protect the interests of the proposed class, the court should consider whether counsel is competent and diligent, whether the action is a collusive suit, and whether there are any antagonistic or conflicting claims between the representative plaintiffs and members of the proposed class." *Governor's Grove Condominium Assn., Inc.* v. *Hill Development Corporation,* 35 Conn. Sup. 199, 202; see also *Eisen* v. *Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir.). This requirement is the most important because it involves due process considerations. Since the absent class members will be conclusively bound by the judgment, the court must

ensure that their interests are adequately represented. See *Hansberry* v. *Lee,* 311 U.S. 32; *Eisen* v. *Carlisle & Jacquelin,* supra, 562; *Linder* v. *Litton Systems, Inc.,* 81 F.R.D. 14, 19 (D. Md.); *Barrett* v. *Southern Connecticut Gas Co.,* 172 Conn. 362, 373. This requires the representative to have so substantial a stake in the outcome of the litigation that he assures the court that he will "put up a real fight." *Barrett,* supra, 373; see generally Wright & Miller, op. cit., § 1766, p. 633. Moreover, the class representative must be part of the class and possess the same interest and injury as the class members. *East Texas Motor Freight System, Inc.* v. *Rodriguez,* 431 U.S. 395, 403.

There is no contention that the plaintiff's representation is anything but adequate. The fact that counsel for the class is experienced in this type of litigation and the quality of the pleadings and briefs lead the court to conclude that counsel is competent and diligent.[7] There is no evidence that this is a collusive suit or that the plaintiff's claims are in conflict with those of the class.[8] The possibility of antagonistic claims is most apparent in cases involving a significant monetary recovery from private industry where the defendant is likely to go out of business (thereby depriving class members of a service they desire) or pass the increased costs of operation on to the class members, or where the relief sought is not the type desired by all class members. See note, "Class Actions: Rule 23(a)(3) and (4)," 53 Bost. U. L. Rev. 406, 418-27 (1973). The relief sought, if granted, will benefit all members of the

---

[7] The speed with which class certification is sought is a factor in the determination of whether counsel is diligent. See *East Texas Motor Freight System, Inc.* v. *Rodriguez,* 431 U.S. 395, 405; *Lyon* v. *Arizona,* 80 F.R.D. 665, 667 (D. Ariz.). In this case the plaintiff diligently filed the motion for class certification only two months after the complaint was filed.

[8] This finding of no antagonistic or conflicting claims follows from our finding that the plaintiff's claims are typical of the claims of the class.

class of students adversely affected by the policy.[9] In addition this is not the type of case where any monetary award will be passed on to the class, or cause the public school system to collapse. Finally, the plaintiff has been directly and adversely affected by the application of the challenged policy. This gives him a substantial stake in the outcome of the action thereby ensuring vigorous prosecution.[10] The mere fact that the plaintiff is a student at present does not disqualify him from acting as a representative of former students. See *Governor's Grove Condominium Assn., Inc.* v. *Hill Development Corporation,* 35 Conn. Sup. 199, 203. The court concludes that the plaintiff will fairly and adequately represent the interests of the class.

## VI

Unlike the requirement of Practice Book, 1978, § 87 (2), that common issues exist, this requirement involves the stricter standard that the common issues predominate over the individual issues. See *Wilensky* v. *Olympic Airways, S.A.,* 73 F.R.D. 473, 477 (E.D. Pa.); Wright & Miller, op. cit., § 1778, p. 52. The key to the requirement, however, is that the common issues *predominate,* not that they be *dispositive* of the action; *In re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322, 345 (E.D. Pa.); so that the fact that some individual issues may remain after the common issues are resolved is unimportant. *Dolgow* v. *Anderson,* 43 F.R.D. 472, 490 (E.D. N.Y.), rev'd, 438 F.2d 825 (2d Cir.). Thus, "predominance" does not require a complete unan-

---

[9] Former students will have their transcripts cleared as well as possibly recovering damages. Present and future students will benefit by not having to suffer the policy's operation and effect.

[10] The plaintiff will be a student at New Milford High School for another year. Even if this case continues after his graduation, he will still maintain a significant interest in the outcome since the effect of the policy remains on his transcript and adversely affects his opportunities to get a job or go to college.

imity of common questions as to all class members. *Cohen* v. *Uniroyal, Inc.,* 77 F.R.D. 685, 695 (E.D. Pa.); *Chevalier* v. *Baird Savings Assn.,* 72 F.R.D. 140, 150 (E.D. Pa.).

As stated earlier, the major thrust of this action is a challenge to the defendant's attendance policy on its face, and the only concern with its application in an individual case is whether it was applied, not how it was applied. The case will turn on the common legal questions of whether the promulgation of the policy, in the first instance, was ultra vires, whether the application of the policy to a student violates due process rights, and whether the waiver provision is arbitrary and unconstitutional because of the lack of standards to guide the decision maker. The application of the policy, if unreasonable, harms a student whether that harm be loss of job opportunity or loss of the opportunity to attend the college of his or her choice. As mentioned earlier, when so many common issues exist, it is immaterial that there may be individual questions relating to damages; see *Governor's Grove Condominium Assn.* v. *Hill Development Corporation,* 35 Conn. Sup. 199, 204; or to compliance with the statute of limitations. See *Cameron* v. *E.M. Adams & Co.,* 547 F.2d 473, 478 (9th Cir.); *Williams* v. *Sinclair,* 529 F.2d 1383, 1388 (9th Cir.), cert. denied, 426 U.S. 936. The court concludes, therefore, that the common issues of the statutory and constitutional validity of the policy predominate over any individual issues that may exist.

## VII

In determining whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy, the court must initially consider what other procedures, if any, exist for disposing of the dispute. Wright & Miller, op. cit., § 1779, p. 59. In this case there appear to be

four alternatives: individual lawsuits by putative class members; joinder of parties; administrative agency determination; and the so-called "test case" procedure.

Where, as here, common issues predominate and parties are numerous, the superiority of a class action over individual lawsuits is obvious and has been recognized by the courts. See, e.g., *Roper* v. *Consurve, Inc.*, 578 F.2d 1106, 1112–13 (5th Cir.), aff'd sub nom., *Deposit Guaranty National Bank* v. *Roper*, 100 S. Ct. 1166; *Bryan* v. *Amrep Corporation*, 429 F. Sup. 313, 318 (S.D. N.Y.); *In re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322, 358 (E.D. Pa.); *Governor's Grove Condominium Assn., Inc.* v. *Hill Development Corporation*, supra, 204. The reasons for the superiority of class actions over individual suits were set forth by the court in *Sugar Industry* (p. 358): "(1) the alleged economic injuries to many proposed class members are too minuscule to justify their independent commencement of actions; (2) the proliferation of lawsuits that otherwise would result from the alleged pervasive conspiracy absent class actions will be minimized; (3) duplicative efforts by the judiciary and the litigants will be eliminated; (4) duplicative litigation expenses and attorneys' fees will be prevented; (5) defendants will be relieved from the burden of defending numerous lawsuits geographically scattered throughout the nation; and (6) inconsistent judicial decisions will be avoided." These reasons are applicable in the present case.

The superiority of a class action over individual joinder pursuant to Practice Book, 1978, § 83 has already been demonstrated; the parties are so numerous that joinder is impracticable. Similarly, although some courts and commentators have suggested the desirability of deferring to an administrative agency, where appropriate, rather than pro-

ceeding as a class action; see, e.g., *Kamm v. California City Development Corporation,* 509 F.2d 205, 211 (9th Cir.); *Schaffner v. Chemical Bank,* 339 F. Sup. 329, 336 (S.D. N.Y.); Wright & Miller, op. cit., § 1779, p. 64; that alternative is foreclosed in this case by this court's ruling on the defendant's motion to dismiss. That ruling held that as between the state board of education and the court, the latter is the preferable forum to litigate these claims.

Finally, in *Katz v. Carte Blanche Corporation,* 496 F.2d 747 (3d Cir.), cert. denied, 419 U.S. 885, the court applied the so-called "test case" procedure, whereby the case proceeds to trial on the merits with the named plaintiff as the only party, and only if liability is found against the defendant is there a determination on the class certification issue. Accord, *Carpenter v. Suffolk Franklin Savings Bank,* 370 Mass. 314, 346; see generally note, 88 Harv. L. Rev. 825 (1974). The court advanced two major reasons for employing this procedure: (1) by staying the determination of a class the plaintiff is saved the burdensome expense of mailing notice to class members who may not even be necessary to a determination of the issues; and (2) the defendant is saved the burden of having its business harmed or interrupted by the mailing of early notice. *Katz v. Carte Blanche Corporation,* 496 F.2d 747, 760–61. Neither of these considerations is applicable here. In *Katz,* the putative class included all Carte Blanche credit card holders. The size and geographic diversity of this class would clearly make notice an expensive proposition.[11] In this case, the number of possible class members is much smaller and they are all located in the immediate geographical area, making the cost of notice (whether by individual mailing or publica-

[11] The court noted the possible cost of mailing to be approximately $37,500. *Katz v. Carte Blanche Corporation,* 496 F.2d 747, 761.

tion) much less expensive. Secondly, the defendant has failed to demonstrate how early notice would prejudice it, unlike the defendant in *Katz* who would suffer substantial loss of business if its customers knew it was allegedly engaged in improper conduct prior to a determination of liability. Thus, the court finds the test case procedure inappropriate in this case.[12]

The above discussion indicates the superiority of a class action over other available methods. Judicial economy is best served by proceeding as a class action. Fairness requires such a procedure since it is likely that class members would be hesitant to proceed individually for fear of retaliation or because of the small economic stake of individual members in the outcome. Manageability also does not appear to be a problem because of the limited size and geographic concentration of the class members. If any problems arise as to manageability of the class, the court is empowered under Practice Book, 1978, § 90 to order an amendment to the pleadings eliminating all reference to absent parties. On the basis of those reasons, the court finds the class action to be the superior method.

## VIII

On the basis of the above discussion, the court finds that all of the requirements of Practice Book, 1978, §§ 87 and 88 are satisfied. The court accordingly certifies that this action may be maintained as

---

[12] Although not particularly applicable in a case such as this where the defendant seeks to have the "test case" procedure employed, there is another reason not to use the procedure in a liberal manner. This method gives the putative class members the opportunity to "sit back" and see how the case will come out. If liability is found they can join the suit and reap its benefits. If liability is not found they can exercise the option not to join and institute individual lawsuits on their own since they are not bound by the judgment. Such a procedure is inconsistent with the policy and purpose of the modern class action. See generally note, 88 Harv. L. Rev. 825 (1974).

a class action on behalf of all past, present and future students at New Milford High School who have been, are or will be subject to the defendant's attendance policy that is challenged herein. The plaintiff will be responsible for providing reasonable notice to the class members in a manner to be directed by the court after argument by the parties.[13] If at any time the court is not satisfied with the adequacy of representation on behalf of absent class members, it will exercise its power pursuant to Practice Book, 1978, § 90 and order a decertification of the class.

---

[13] Rule 23 (c) (2) of the Federal Rules of Civil Procedure expressly provides for individual notice by mail when the names and addresses of the class members are known or readily ascertainable. See also *Eisen* v. *Carlisle & Jacquelin*, 417 U.S. 156, 173–77. Practice Book, 1978, § 90 only provides for "reasonable notice." The court therefore, reserves decision until after argument on what type of notice is required by the Practice Book. See generally *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306 (manner of notice required by due process).